## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Steven Kulkay,

Case No. 15-cv-34 (RHK/TNL)

        Plaintiff,

v.

**REPORT &**
**RECOMMENDATION**

Tom Roy,
Commissioner of the Minnesota
Department of Corrections,

Minnesota Department of Corrections, The,

Minnesota, The State of,

Jeremy Schwartz,
in his official and individual capacities,

Alice Remillard,
in her official and individual capacities,

John Doe,
in his official and individual capacities, and

Richard Doe,
in his official and individual capacities,

        Defendants.

J. Mark Catron and Nathaniel A. Dahl, Hansen Dordell Bradt Odlaug & Bradt, PLLP, 3900 Northwoods Drive, Suite 250, St. Paul, MN 55112; and Michael Kemp, MET Law Group, 500 Laurel Avenue, St. Paul, MN 55102 (for Plaintiff); and

Michael P. Goodwin (on briefs and at oral argument) and Eric V. Brown, Assistant Minnesota Attorney Generals, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101-2128 (for Defendants).

# I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendants' Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 15).[1] This motion has been referred to the undersigned magistrate judge for a report and recommendation to the district court, the Honorable Richard H. Kyle, District Judge of the United States District Court for the District of Minnesota, pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

A hearing was held. Nathaniel A. Dahl and Michael Kemp appeared on behalf of Plaintiff Steven Kulkay. Michael P. Goodwin appeared on behalf of Defendants Thomas Roy, Commissioner of the Department of Corrections; the Minnesota Department of Corrections ("MDOC"); the State of Minnesota ("State"); Jeremy Schwartz; Alice Remillard; John Doe; and Richard Doe (collectively, "Defendants").

Based upon the file, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 15) be **GRANTED**.

---

[1] This is actually the second motion to dismiss filed by Defendants. While the first motion to dismiss (ECF No. 5) was pending, Kulkay filed the Amendment Complaint (ECF No. 13). As aptly summarized by Defendants, the "Amended Complaint adds allegations about [Kulkay's] supervised release status and about the kind of saw that [Kulkay] was assigned to use at the time of his injuries, and adds legal argument about alleged violations of [occupational safety and health] regulations." (Defs.' Reply at 2 (citations omitted), ECF No. 17.) The Amended Complaint also added additional allegations about the roles of Schwartz and Remillard. (Am. Compl. ¶¶ 20-21.) Defendants filed the instant motion to dismiss after the Amended Complaint was filed and have incorporated their previous arguments by dereference. (*See* Defs.' Reply at 2-3.) *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane *Federal Practice and Procedure* § 1476 (3d ed. 2010) ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court may simply consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance." (footnote omitted)).

## II. BACKGROUND[2]

This lawsuit arises out of an accident in a prison workshop when Kulkay was incarcerated at the Faribault, Minnesota correctional facility ("MCF-Faribault") in 2013. (Am. Compl. ¶¶ 11, 22.)  Commissioner Roy is the Commissioner of the MDOC, whose responsibilities include instituting safety policies and procedures.  (Am. Compl. ¶¶ 6, 20.) Remillard is the safety director at MCF-Faribault and charged with enforcing safety policies and procedures.  (Am. Compl. ¶¶ 7, 21.)  Schwartz is "the supervising safety officer in charge of [MCF-Faribault's] workshop, and the person primarily charged with implementing safety procedures in the workshop," as well as "maintenance and troubleshooting of the [workshop's] beam saw."  (Am. Compl. ¶ 20; *see* Am. Compl. ¶ 7.)  Remillard and Schwartz are also employed by the MDOC.  (Am. Compl. ¶ 6.)

On the day of the accident, "Kulkay was assigned to work in the facility's industry [workshop] and directed to perform wood cutting utilizing a beam saw."  (Am. Compl. ¶ 11.)  "The beam saw is a large, stationary device which workers can use to load one or more beams to make cuts using a large, circular blade that extends from the work table." (Am. Compl. ¶ 13.)  At the time, "several of the manufacturers' [sic] safety guards that would have prevented the events complained of were not installed on the beam saw." (Am. Compl. ¶ 18.)  "The safety guard equipment for the saw—guards intended to prevent the saw blade from extending unsafely—were sitting unused at the facility." (Am. Compl. ¶ 22; *see* Am. Compl. ¶¶ 15, 18, 19.)  While operating the beam saw,

---

[2] "In analyzing a motion to dismiss, a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party."  *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014).

Kulkay severed three fingers and partially severed a fourth.  (Am. Compl. ¶¶ 22, 23.) Kulkay had not received any formal training on use of the beam saw, only "guidance from the inmate who had previously held his position."  (Am. Compl. ¶ 17.)  "Despite being raced to the hospital, efforts to reattach . . . Kulkay's severed fingers were unsuccessful."  (Am. Compl. ¶ 22.)  Shortly before the filing of this law suit, Kulkay was released, but remains on parole until 2031.  (Am. Compl. ¶ 32.)

Kulkay brings this action against all Defendants for violations of his civil rights under the Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and against the State and MDOC as vicariously liable for the negligence of their employees.

### III. ANALYSIS

Defendants move to dismiss Kulkay's claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Defendants assert that aspects of Kulkay's § 1983 claim and his entire vicarious-liability claim are barred by the Eleventh Amendment; the State is not a proper party to this action; Defendants are entitled to qualified immunity with respect to Kulkay's § 1983 claim; Kulkay has failed to state a claim against Commissioner Roy; Kulkay lacks standing to sue for prospective injunctive relief; and Minn. Stat. § 3.738 is the exclusive remedy for Kulkay's vicarious-liability claim.

#### A. Eleventh Amendment & Sovereign Immunity

The Court first addresses the Eleventh Amendment and sovereign immunity arguments raised by Defendants.  "The sovereign immunity enjoyed by states and recognized in the Eleventh Amendment bars private parties from bringing actions for damages against unconsenting states in federal courts."  *Thomas v. St. Louis Bd. of Police*

4

*Comm'rs*, 447 F.3d 1082, 1084 (8th Cir. 2006); *accord Bisciglia v. Lee*, No. 04-cv-4977 (DSD/SRN), 370 F. Supp. 2d 874, 877 (D. Minn. 2005) ("The Supreme Court has interpreted the Eleventh Amendment to provide that federal courts do not have subject matter jurisdiction over suits against non-consenting states." (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996))).  The Eleventh Amendment effectively "immunizes from suit a 'state agency or official if immunity will protect the state treasury from liability that would have had essentially the same practical consequence as a judgment against the State itself.'"  *King v. Dingle*, No. 08-cv-5922 (ADM/RLE), 702 F. Supp. 2d 1049, 1068 (D. Minn. 2010) (quoting *Hadley v. N. Ark. Cmty. Tech. Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996) (internal quotation omitted)).  "Thus, the Eleventh Amendment bars actions, in Federal Court, which seek monetary damages from individual State Officers, in their official capacities, . . . for the recovery of money from the state."  *Id.* at 1069 (quotation omitted).  Moreover, "[w]hile under the doctrine set forth in *Ex Parte Young*, state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, the same doctrine does not extend to states or state agencies."  *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (citing 209 U.S. 123 (1908)); *accord Harris v. McSwain*, 417 F. App'x 594, 595 (8th Cir. 2011) (per curiam) ("[The] Eleventh Amendment bars suits against states and state agencies for any kind of relief.").

"To overcome the Eleventh Amendment prohibition to suit, a state may waive its Eleventh Amendment immunity, or Congress may lawfully abrogate that immunity." *Bisciglia*, 370 F. Supp. 2d at 877.  Waiver of this constitutional protection will only be

found "where stated by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction." *Id.* at 877-78 (quotation omitted). "No express language indicates that the State of Minnesota has waived its immunity, nor does any statute abrogate this immunity" for the claims Kulkay seeks to bring in federal court. *Id.* at 878; *see DeGidio v. Perpich*, 612 F. Supp. 1383, 1389 (D. Minn. 1985) (Murphy, J.) ("While Minnesota has waived its sovereign immunity to some extent in Minn. Stat. § 3.736, the language of subdivision 2 of that section does not clearly show that Minnesota intended to waive any claim of sovereign immunity in federal court." (footnote omitted)); *see also* Minn. Stat. § 1.05 (waiver of immunity for violations of certain federal statutes).

Kulkay does not appear to dispute that *some* of his claims are barred by the Eleventh Amendment, arguing only that not all of his claims are barred based on the prospective injunctive relief sought.  (Pl.'s Resp. at 12-13, ECF No. 14.)  To the extent Kulkay seeks any relief from the State and the MDOC as an arm of the State, his claims are barred by the Eleventh Amendment. *Monroe*, 495 F.3d at 594; *Harris*, 417 F. App'x at 595; *see Thomas*, 447 F.3d at 1084 ("Eleventh Amendment immunity extends to states and arms of the state." (quotation omitted)); *Saldana v. Crane*, No. 12-cv-573 (DWF/TNL), 2013 WL 4747961, at *14 (D. Minn. Sept. 4, 2013) (DOC entitled to Eleventh Amendment immunity as arm of the state).  Therefore, the Court lacks subject matter jurisdiction over Kulkay's § 1983 and vicarious-liability claims against the State and MDOC.  *See Bisciglia*, 370 F. Supp. 2d at 878.

Similarly, as Commissioner Roy is only being sued in his official capacity,[3] to the extent Kulkay seeks monetary damages against Commissioner Roy, such damages are not recoverable. *Thomas*, 447 F.3d at 1084; *Karsjens v. Jesson*, No. 11-cv-3659 (DWF/JJK), 6 F. Supp. 3d 916, 942 (D. Minn. 2014) ("[T]o the extent Plaintiffs may seek any such monetary damages against Defendants in their official capacities, the Court agrees that monetary damages are not recoverable."); *Hodgson v. Fabian*, No. 08-cv-5120 (JNE/SRN), 2009 WL 2972862, at *6 (D. Minn. Sept. 10, 2009) ("It is well-settled that in a 42 U.S.C. § 1983 action, the Eleventh Amendment precludes an award of money damages against a state official acting in his or her official capacity.  A plaintiff may maintain an action against a government official if the complaint seeks only injunctive or prospective relief." (citations omitted)), *aff'd*, 378 F. App'x 592 (8th Cir. 2010).   As Kulkay correctly points out, however, his claims for prospective relief against Commissioner Roy, Schwartz, Remillard and the Doe defendants in their official capacities are not barred by the Eleventh Amendment.  (*See* Pl.'s Resp. at 12-13.)  *See Monroe*, 495 F.3d at 594; *Karsjens*, 6 F. Supp. 3d at 942; *Hodgson*, 2009 WL 2972862, at *6.  Nor are his claims barred for monetary damages against Schwartz, Remillard, and the Doe defendants in their individual capacities.  (*See* Pl.'s Resp. at 12-13.)  *See Monroe*, 495 F.3d at 594; *Karsjens*, 6 F. Supp. 3d at 942; *Hodgson*, 2009 WL 2972862, at *6.

---

[3] While Kulkay specifically states that Schwartz, Remillard, and the Doe defendants are being sued in their individual *and* official capacities (Am. Compl. ¶¶ 8, 9), Kulkay does not specify the capacity in which Commissioner Roy is being sued.  If a complaint "is silent about the capacity" in which the defendant is sued or "does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity." *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007) (quotations omitted).

Based on the foregoing, the Court recommends that both Kulkay's § 1983 claim and vicarious-liability claim against the State and the MDOC be dismissed for lack of subject matter jurisdiction.[4] Similarly, to the extent Kulkay seeks monetary damages from Commissioner Roy in connection with his § 1983 claim, it is recommended that such claim also be dismissed for lack of subject matter jurisdiction.

### B.  1983 Claim

Kulkay's remaining claim is his § 1983 claim for violation of his Eighth and Fourteenth Amendment rights against Schwartz, Remillard, and the Doe defendants in their individual capacities and these defendants as well as Commissioner Roy in their official capacities for prospective injunctive relief.  "To state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law."  *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013); *see also* 42 U.S.C. § 1983.

### 1.  Fourteenth Amendment

Kulkay asserts that his rights under the Eighth Amendment *and* the Fourteenth Amendment were violated based on the conditions of MCF-Faribault's workshop.  (*See* Am. Compl. ¶¶ 33-43.)  Kulkay relies on the same factual allegations for both alleged constitutional violations.   "Prison work assignments are conditions of confinement

---

[4] Because the Court concludes that it does not have subject matter jurisdiction over the State, the Court declines to address Defendants' argument that the State is not a proper party to this lawsuit.  (*See* Defs.' Mem. in Supp. at 8, ECF No. 7.)  Likewise, because the Court recommends that Kulkay's vicarious-liability claim be dismissed for lack of subject matter jurisdiction, the Court declines to address whether Minn. Stat. § 3.738 provides an exclusive remedy.  *See* Minn. Stat. §3.738, subd. 1 ("Claims and demands arising out of injury to . . . an inmate of a state correctional facility while performing assigned duties shall be presented to, heard, and determined by the legislature.").

subject to scrutiny under the Eighth Amendment." *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993) (citing *Bibbs v. Armontrout*, 943 F.2d 26, 27 (8th Cir. 1991), *cert denied*, 502 U.S. 1110 (1992)); *accord Ambrose v. Young*, 474 F.3d 1070, 1075 (8th Cir. 2007); *Stephens v. Johnson*, 83 F.3d 198, 200 (8th Cir. 1996). "'If a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *Curry v. Fed. Bureau of Prisons*, No. 05-cv-2781 (PJS/JSM), 2007 WL 2580558, at *10 (D. Minn. Sept. 5, 2007) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). "In applying this principal, courts have concluded that an Eighth Amendment claim that is coterminous with a substantive due process claim[] supersedes the due process claim." *Id.* (citing cases). Because Kulkay's Fourteenth Amendment claim is duplicative of his Eighth Amendment claim, the Court recommends that the Fourteenth Amendment claim be dismissed. *See id.*

### 2. Eighth Amendment

As noted above, "prison working conditions are subject to scrutiny under the Eighth Amendment." *Stephens*, 83 F.3d at 200. Defendants assert that they are entitled to qualified immunity with respect to Kulkay's § 1983 claim because "it is not clearly established that the facts alleged by [Kulkay] amount to an Eighth Amendment violation." (Defs.' Mem. in Supp. at 4; *see* Defs.' Reply at 3-6.) Defendants also assert that Kulkay has not sufficiently alleged the personal involvement of Commissioner Roy in any purported Eighth Amendment violation.

"In claims brought under 42 U.S.C. § 1983, 'qualified immunity shields government officials from liability and the burdens of litigation unless their conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known.'" *Schoettle v. Jefferson Cnty.*, 788 F.3d 855, 858 (8th Cir. 2015) (quoting *Carpenter v. Gage*, 686 F.3d 644, 648 (8th Cir. 2012)); *accord Keil v. Triveline*, 661 F.3d 981, 985 (8th Cir. 2011) ("Qualified immunity shields public officials from civil lawsuits when their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982))).  In determining whether a government official is entitled to qualified immunity, courts consider "(1) whether the facts alleged, construed in the light most favorable to [the plaintiff], establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that her actions were unlawful." *Keil*, 661 F.3d at 985 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "If the answer to either question is no, then the [officials] are entitled to qualified immunity." *Id.* (citing *Pearson*, 555 U.S. at 236). "[C]ourts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.'" *Nord v. Walsh Cnty.*, 757 F.3d 734, 738-39 (8th Cir. 2014) (quoting *Pearson*, 555 U.S. at 236).

"A Rule 12(b)(6) dismissal based on qualified immunity is appropriate when the immunity is established on the face of the complaint." *Dornheim v. Sholes*, 430 F.3d 919, 926 (8th Cir. 2005) (quotation omitted); *accord Bradford v. Huckabee*, 394 F.3d

1012, 1015 (8th Cir. 2005); *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996).  "A court considers whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the time of the alleged infraction."  *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013); *see Hafley*, 90 F.3d at 266 (public officials "are entitled to qualified immunity unless [the plaintiff] has alleged the violation of a constitutional right that was clearly established at the time of the alleged violation").

### a.  No Constitutional Violation

"To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to 'state a claim to relief that is plausible on its face.'"  *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  "[A]lthough a complaint need not contain 'detailed factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'"  *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  When ruling on a 12(b)(6) motion to dismiss on the basis of qualified

immunity, the Court "must accept the allegations in the complaint as true and construe all reasonable inferences therefrom in favor of [Kulkay] at this early stage in the litigation." *Hafley*, 90 F.3d at 267; *accord Hager*, 735 F.3d at 1013.

"To prevail on an Eighth Amendment claim, an inmate must prove both an objective element, which asks whether the deprivation was sufficiently serious, and a subjective element, which asks whether the defendant officials acted with a sufficiently culpable state of mind." *Choate*, 7 F.3d at 1373. "In the work assignment context, prison officials are deliberately indifferent when they knowingly compel convicts to perform physical labor which is beyond their strength or which constitutes a danger to their health, or which is unduly painful." *Id.* at 1374 (quotation omitted); *accord Ambrose*, 474 F.3d at 1075. "[M]ere negligence or inadvertence is insufficient to satisfy this standard." *Choate*, 7 F.3d at 1374; *accord Stephens*, 83 F.3d at 200. Accordingly, in order to state a violation of his Eighth Amendment rights, Kulkay must allege sufficient facts showing that (1) use of the beam saw under the circumstances (without all of the manufacturer's guards installed, without formal training, without complying with certain occupational safety and health regulations, and despite the occurrence of other saw-related accidents) posed a substantial risk of serious harm to Kulkay, and (2) Defendants knew of but disregarded or were deliberately indifferent to Kulkay's safety. *See Ambrose*, 474 F.3d at 1077-78.

Assuming for purposes of this motion only that use of the beam saw under these circumstances posed a substantial risk of serious harm, the Court concludes that Plaintiff has nevertheless failed to state a violation of his Eighth Amendment rights because he has

not alleged sufficient facts showing that Defendants were deliberately indifferent to his safety. In *Warren v. Missouri*, an inmate's wrist was "broken by a board that kicked back from the industrial table saw he was operating at the [prison's] furniture factory." 995 F.2d 130, 130 (8th Cir. 1993). The inmate brought a § 1983 claim against certain prison officials, alleging, in relevant part, that the officials violated his Eighth Amendment rights by "act[ing] with 'deliberate indifference' to his safety by failing to equip the saw with 'anti-kickback fingers' despite knowledge of prior similar injuries." *Id.* The Eighth Circuit held that the defendants were entitled to summary judgment on the basis of qualified immunity because "[e]ven assuming that one or more defendants had knowledge of the allegedly similar prior accidents[,] . . . this showing falls far short of creating a genuine issue of deliberate indifference to a serious issue of workplace safety." *Id.* at 131. The Eighth Circuit concluded that the inmate was left with nothing more than a claim that the "defendants negligently provided him an unsafe work place," and, because negligence does not amount to a constitutional violation, the defendants were entitled to qualified immunity. *Id.*

Similar Eighth Amendment claims arising out of the lack of safety equipment and training at a prison work site have also been rejected. In *Choate v. Lockhart*, an inmate was assigned to a prison construction crew. 7 F.3d at 1372-73. The crew was assigned to build a garage and, while working on the roof, the inmate slid and fell off the roof onto the concrete below. *Id.* at 1373. The inmate asserted that his Eighth Amendment rights were violated due to unsafe working conditions. *Id.* The district court concluded that prison employees were deliberately indifferent to the inmate's safety, citing, among other

things, too many inmates were required to work on the roof at the same time; the electric saw the inmates were required to use "added sawdust to an already slick surface that was at a forty-five degree angle"; the inmates did not have proper footwear; another inmate had complained about the "roof being slick"; and the roof lacked "toe boards" or scaffolding as safety precautions. *Id.* at 1374.

While observing that "the garage here was perhaps not a model of workplace safety," the Eighth Circuit disagreed with the district court. *Id.* at 1375. The Eighth Circuit held that "the various safety deficiencies that the district court cited do not establish that [the prison employees] acted with deliberate indifference." *Id.* Returning to the reasoning of *Warren*, the Eighth Circuit stated: "Like failing to put a safety device on a saw despite knowledge of the saw's potential danger, failing to erect toe boards on the roof or require inmates to wear rubber-soled shoes, for instance, despite one complaint about slickness does not violate the Constitution." *Id.* at 1375-76. "The evidence . . . at most suggest[ed] that the [prison employees] were negligent in not taking greater safety precautions at the worksite[,] . . . [which] does not rise to the level of a constitutional violation." *Id.* at 1376. The Eighth Circuit concluded that the "rigorous standard" of deliberate indifference had not been met. *Id.*

In *Stephens v. Johnson*, a group of inmates alleged working conditions at a warehouse violated the Eighth Amendment. 83 F.3d at 199-200. Among other things, the "inmates were not issued safety equipment such as hard hats, protective eyewear, back braces, and steel-toed boots"; "the forklift and trucks had mechanical problems"; "dollies used to move furniture did not have safety straps"; and the "inmates did not

14

receive safety training." *Id.* at 200.  At trial, inmates testified about injuries they had received while working at the warehouse, including back, knee, hand, and foot injuries, as well as getting dust in their eyes.  *Id.*

The Eighth Circuit concluded that, even if the administrator of the prison work program "was aware of safety problems at the warehouse, such a showing falls short of creating a genuine issue of deliberate indifference to workplace safety."  *Id.* at 201. Citing *Warren*, the Eighth Circuit noted that "[s]imply failing to provide inmates who move furniture with steel-toed boots, protective eyewear, and hard hats, for example, does not establish a constitutional violation any more than failing to install a safety device on a saw despite knowledge of prior injuries."  *Id.*; *see Brewer v. Graves*, 152 F. App'x 548, 549 (8th Cir. 2005) (per curiam) ("The absence of safety glasses at [the inmate's] worksite constitutes at most negligence, which cannot support a finding of deliberate indifference.").  The Eighth Circuit observed that, "[t]o convert conduct that does not even purport to be punishment into conduct violative of the Eighth Amendment, 'more than ordinary lack of due care for the prisoner's interests or safety' must be shown.'"  *Stephens*, 83 F.3d at 201 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Noting that the administrator "had had discussions with various prison officials" about some of the requested safety equipment, some of the safety equipment was provided, and a safety rail had been installed in an upper storage area, the Eighth Circuit held that "the evidence as to the working conditions at the prison warehouse at most establishes that [the administrator] was negligent in not taking greater safety precautions than he did" and "[n]egligence . . . is not enough to establish a constitutional violation."  *Id.*

In *Ambrose v. Young*, the decedent inmate was part of an emergency-response team that assisted with clean up following natural disasters. 474 F.3d at 1073. While the team was on site, a truck drove by and caught a live power line. *Id.* at 1074. When the power line snapped free from the truck, it "ignited a small grass fire." *Id.* An officer and a group of inmates ran toward the fire, at which point the officer yelled for everyone to stop because of the power line. *Id.* Another corrections employee supposedly called 911. *Id.* The team's supervisor, another corrections employee, evaluated the fire and asked the inmates if they thought it could be stomped out. *Id.* When the inmates responded affirmatively, the supervisor directed them "to 'be careful and just stop the fire's outer edge.'" *Id.* When the fire was out, the supervisor told the inmates to move away from the area and, in the process, the decedent inmate "lost his balance and came in contact with the dangling power line." *Id.* The decedent inmate was "gripped" by the line. *Id.* While several inmates wanted to help free the decedent inmate from the line, they were directed to stay back by corrections employees, and the inmate was killed. *Id.*

The Eighth Circuit held that the district court properly denied qualified immunity to the supervisor who directed the team to stomp out the fire because his "instruction to stomp out a fire burning near a dangling, live power line constituted deliberate indifference to a known and substantial risk" and it was well-established that directing an inmate to perform work dangerous to his or her life or health was in violation of the Eighth Amendment. *Id.* at 1078. The Eighth Circuit stated the supervisor's "conduct was not 'objectively legally reasonable.'" *Id.* Conversely, the Eighth Circuit held that the district court erroneously denied qualified immunity to the corrections employee who

purportedly called 911. *Id.* at 1079. Taking together the employee's knowledge that the power line was live and dangerous, inconsistent statements regarding his 911 calls, failure to "tell his crew to stop or stay away from the power line," and refusal to "go no closer than within ten feet of the downed power line," the Eighth Circuit held that "[a]t most, these facts tend to show [the employee] acted *unreasonably* in failing to take certain measures, which is not enough to support liability under the Eighth Amendment." *Id.* (emphasis added).

Returning to the case at hand, the facts alleged bear more resemblance to *Warren*, *Choate*, and *Stephens*, and the employee in *Ambrose*, rather than the supervisor in *Ambrose*. Assuming for the purposes of this motion the truth of Kulkay's allegations, the alleged facts purporting to show Defendants' deliberate indifference to Kulkay's safety are: (1) all of the manufacturer's safety guards were not installed on the beam saw; (2) Kulkay did not receive formal training on use of the beam saw; (3) Defendants were aware of other saw-related injuries; and (4) conditions at the workshop violated certain occupational safety and health regulations. Under *Warren*, *Choate*, *Stephens*, and *Ambrose*, the absence of certain safety equipment or training, the awareness of similar injuries, and a failure to take certain measures are not enough to show deliberate indifference.

Nor do Kulkay's allegations that the condition of the beam saw violated certain occupational safety and health regulations demonstrate that Defendants acted with a sufficiently culpable state of mind. "[T]he Eighth Amendment does not constitutionalize safety regulations, nor does it mandate that the regulations be followed." *Curry*, 2007

WL 2580558, at *9 (citing *French v. Owens*, 777 F.2d 1250, 1257 (7th Cir. 1985)); *see Robards v. Stephan*, 977 F.2d 596, at *2 (10th Cir. 1992) ("Similarly, Robard's allegations that the paint factory fails to meet federal and state safety standards are insufficient to form the basis of an Eighth Amendment violation.  Workplace safety codes promulgated by state and federal governments do not establish constitutional standards."); *McMinn v. Dodson*, No. 11-cv-01511-PAB-KMT, 2012 WL 4050308, at *2 (D. Colo. Sept. 14, 2012) ("Moreover, even if noncompliance with mandatory OSHA regulations can be considered a 'policy' and even if such noncompliance was a direct cause of plaintiff's injury, plaintiff's allegations that [the county recycling facility] failed to follow various safety codes fails to state a claim under the Eighth Amendment."); *see also Barnes v. Trotter*, No. 3:11-CV-166-TLS, 2011 WL 2604344, at *1 (N.D. Ind. June 30, 2011) ("As a convicted prisoner, Barnes may not be subjected to conditions which violate the Eighth Amendment, but 'not every deviation from ideally safe conditions constitutes a violation of the [C]onstitution.  The [E]ighth [A]mendment does not constitutionalize the Indiana Fire Code.  Nor does it require complete compliance with the numerous OSHA regulations.'"  (quoting *French*, 777 F.2d at 1257)).  At best, the alleged facts show that Defendants acted negligently, i.e., unreasonably, in directing Kulkay to use the beam saw under these circumstances.  But this sort of unreasonable action is not enough to state an Eighth Amendment claim.  *See Ambrose*, 474 F.3d at 1079.

Deliberate indifference "involves alleged criminal recklessness, where the defendant must 'both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and . . . also draw the inference." *Smith v. Johnson*, 779 F.3d 867, 871 (8th Cir. 2015) (alteration in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  Allegations that the workshop was not a model of workplace safety or that additional safety measures could have and even should have been taken do not rise to the level of recklessly disregarding a known, excessive risk of serious harm to Kulkay.  *See Davis v. Oregon Cnty.*, 607 F.3d 543, 549 (8th Cir. 2010) ("An official's negligence alone is insufficient to meet the subjective component because the official must recklessly disregard a known, excessive risk of serious harm to the inmate." (quotation omitted)).

Kulkay suffered a traumatic, very serious, and extremely unfortunate accident that will present many challenges for the rest of his life.  The Court deeply empathizes with Kulkay's situation, and appreciates that the injuries he sustained to his hand will only add to the numerous hurdles Kulkay already faces having been convicted of a crime.  But, as stated above, there must be "more than ordinary lack of due care for the prisoner's interests or safety" to state an Eighth Amendment violation.  *Stephens*, 83 F.3d at 201 (quotation omitted).  In sum, accepting all of Kulkay's allegations as true and construing all reasonable inferences in favor of Kulkay, Kulkay has failed to state an Eighth Amendment violation and, therefore, Defendants are entitled to qualified immunity under the first prong of the analysis.[5]  *See Hager*, 735 F.3d at 1013; *Keil*, 661 F.3d at 985; *Hafley*, 90 F.3d at 266.

---

[5] Because the Court concludes that Kulkay has failed to state an Eighth Amendment violation, the Court declines to address what personal involvement, if any, Commissioner Roy had in the purported violation.  Similarly, because

### b.  Unlawfulness Not Reasonably Apparent

Kulkay argues that dismissal is inappropriate at this stage and he should be allowed to proceed with discovery and more fully develop the record before a determination is made on qualified immunity.  (*See* Pl.'s Resp. at 9-12.)  "[B]oth the Supreme Court and [the Eighth Circuit] repeatedly have stressed the importance of resolving qualified immunity questions at the earliest possible stage in litigation." *Payne v. Britten*, 749 F.3d 697, 701 (8th Cir. 2014) (quotation omitted).  Indeed, "[t]he potentially lost benefits of qualified immunity include the costs and expenses of litigation, and discovery in particular . . . ." *Id.* at 700-01; *see Schoettle*, 788 F.3d at 858. But, even if the facts alleged in the Amended Complaint could be considered sufficient to plausibly state an Eighth Amendment violation, Defendants would still be entitled qualified immunity under the second prong of the analysis, namely, it is not clearly established that a reasonable official would have known that directing Kulkay to use the beam saw under these circumstances was unlawful.  *See Hager*, 735 F.3d at 1013; *Keil*, 661 F.3d at 985; *Hafley*, 90 F.3d at 266.

True, "[i]t is well-established in this circuit that knowingly compelling an inmate to perform labor that is dangerous to his or her life or health is a violation of the Eighth Amendment." *Ambrose*, 474 F.3d at 1078 (quotation omitted).  But, "[t]he Supreme Court does not permit courts to define clearly established law at high levels of generality; the analysis must take into account the specific facts of each case." *Robinson v. Payton*,

---

Kulkay has failed to state an Eighth Amendment violation, the Court declines to address whether Kulkay has standing to seek prospective injunctive relief in connection with the purported violation.

791 F.3d 824, 829 (8th Cir. 2015) (citing *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)).  "Clearly established law is not defined 'at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Parker v. Chard*, 777 F.3d 977, 980 (8th Cir. 2015) (quoting *Plumhoff*, 134 S. Ct. at 2023).

"To be clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Doby v. Hickerson*, 120 F.3d 111, 113 (8th Cir. 1997) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *accord Nord*, 757 F.3d at 739.  "A plaintiff need not show that the very action in question has previously been held unlawful, but he must establish that the unlawfulness was apparent in light of preexisting law." *Ellison v. Lesher*, 796 F.3d 910, 914 (8th Cir. 2015) (internal quotation and citation omitted) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); *accord Nord*, 757 F.3d at 739.  "'[E]xisiting precedent must have placed the statutory or constitutional question beyond debate.'"  *Nord*, 757 F.3d at 739 (quoting *Stanton v. Sims*, 134 S Ct. 3, 5 (2013) (per curiam)).  "'The salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional.'"  *Ellison*, 796 F.3d at 914 (quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quotations and alterations omitted)).  As demonstrated above, it is not clearly established that directing Kulkay to use the beam saw under these conditions was unlawful in light of the preexisting law. Stated differently, the state of the law was not such that Defendants had fair warning that directing Kulkay to use the beam saw under the conditions alleged was unlawful.

Therefore, Defendants are likewise entitled to qualified immunity under the second prong of the analysis.

## IV. RECOMMENDATION

Based on the file, memoranda, and proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 15) be **GRANTED**.


Date: January _____ 25 _____, 2016                    _____ *s/ Tony N. Leung* _____
                                                      Tony N. Leung
                                                      United States Magistrate Judge
                                                      for the District of Minnesota


                                                      *Kulkay v. Roy*
                                                      Case No. 15-cv-34 (RHK/TNL)



### <u>NOTICE</u>

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.